IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEARNING RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.  19-CV-00660 |
| | ) | |
| v. | ) | Honorable Martha Pacold |
| | ) | |
| PLAYGO TOYS ENTERPRISES LTD, | ) | Honorable Jeffrey Cummings |
| SAM'S WEST, INC., SAM'S EAST, INC., | ) | |
| JET.COM, and WALMART INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Learning Resources, Inc. filed this copyright infringement action alleging that the Walmart defendants (Walmart Inc., Sam's West, Inc., Sam's East, Inc., and Jet.Com) and Playgo Toys Enterprises Ltd. violated the Copyright Act of 1976, 17 U.S.C. §101 *et seq.*, by selling play food items intentionally copied from Learning Resources.  Pursuant to the Court's Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project (as amended December 1, 2018) ("MIDP Order"), the parties exchanged documents that they deemed relevant to the claims and defenses in this case.  Learning Resources, which produced nearly 30,000 documents to defendants, asserts that defendants (who collectively produced less than 2,000 documents) failed to comply with their obligations under the MIDP Order.  After the parties' efforts to resolve their differences failed, Learning Resources filed a motion to compel defendants to search for and produce additional documents that it asserts are relevant to its claims.  Learning Resources and the Walmart defendants have since resolved their dispute after the Walmart defendants agreed to supplement their document production.  (Dckt. #78 at 5).

1

Learning Resources asserts that Playgo has failed to produce all relevant communications regarding the infringing products that its personnel had with the Walmart defendants and amongst themselves. Learning Resources further asserts the MIDP Order requires Playgo to produce documents relating to the development of its 2019 play food products ("2019 Soft Play Food") because defendants' sale of these products "represents an ongoing infringement, which would properly make it part of this case, or it is a new infringement that should be addressed as part of this case in the interest of judicial economy." (Dckt. #81 at 7-8). Learning Resources also argues that these documents are relevant because the changes Playgo made from its Gourmet Play Food that were incorporated into its 2019 Soft Play Food were designed to disguise Playgo's infringement. (*Id.* at 7).[1]

In its opposition brief and supporting declarations, Playgo explained the methods it used to search for relevant documents, described the documents it has produced, and claims that it has fully produced relevant documents relating to its communications both internally and with the Walmart defendants. (Dckt. ##75, 76, 77). Moreover, in the interests of narrowing the parties' dispute, Playgo has provided documents concerning the sales volume, revenues, and expenses for the 2019 Soft Play Food products. (Dckt. #81 at 7). Nonetheless, Playgo asserts that the MIDP Order does not require it to produce any further documents concerning the 2019 Soft Play Food because those products were not mentioned in the Complaint. (Dckt. #75 at 2).[2] Playgo

---

[1] In its reply, Learning Resources also suggests that Playgo has wrongfully withheld documents relating to the design and development of its Gourmet Play Food that is named in the Complaint. (Dckt. #81 at 8). However, Playgo executive Frances Kwan has provided a declaration averring that Playgo has, in fact, produced its documents concerning the design and development of Gourmet Play Food product. (Dckt. #77 at 2). Learning Resources does not dispute Ms. Kwan's testimony on this point. Consequently, the Court denies the motion to the extent that Learning Resources seeks to compel the production of further documents concerning the design and development of the Gourmet Play Food.

[2] Learning Resources, which filed its Complaint in February 2019, did not learn of the 2019 Soft Play Food products until November 2019. (Dckt. #69 at 8).

further asserts that it cannot be compelled to produce these documents because Learning Resources did not serve a Rule 34 document request seeking them and such documents are not, in any event, proportional to the needs of this case given what is at stake. (Dckt. #75 at 9).

### A. Documents concerning Playgo's communications with the Walmart defendants and communications between Playgo's personnel

Learning Resources questions the completeness of Playgo's production of its communications with the Walmart defendants regarding the infringing products by juxtaposing the number of such documents produced by the Walmart defendants (289 communications) with the number of such documents produced by Playgo (32 communications). (Dckt. #81 at 2). Learning Resources also identifies five e-mail chains involving communications between the Walmart defendants and Playgo officials concerning relevant matters (such as Walmart's consideration of Playgo's 2018 and 2019 play food products) that the Walmart defendants produced and Playgo – for the most part – did not. (Dckt. #69 at 7). Finally, Learning Resources raises further questions by pointing to the fact that Playgo has produced only seven e-mails between its own personnel concerning the infringing products. (Dckt. #81 at 2).

Playgo attempts to explain and minimize the above discrepancies in several ways. First, Playgo notes that the 39 communications (both internal and with the Walmart defendants) it produced consisted of "many emails in threads, each containing several emails" and that the "total is far greater than 39 emails." (Dckt. #75 at 7). Next, Playgo asserts without specification that it produced certain of the e-mails that Learning Resources claims it did not produce. (*Id.*). Playgo further notes that its personnel "sometimes use text messages rather than email" and that it produced "numerous text messages." Finally, Playgo explains that the MIDP Order allows a party to determine the documents that it "believe[s]" are relevant to the claims and defenses in

3

the case and that it simply has a "different view[] of what is relevant" than the Walmart defendants have. (Dckt. #75 at 7).

The MIDP Order does indeed provide parties with the latitude of using their judgment to determine what documents they believe are relevant to the parties claims and defenses. MIDP Order, ¶B1. This is consistent with the general rule in federal litigation that litigants "search and review their own documents to determine which documents must be produced as relevant and responsive." *RTC Indus., Inc. v. Fasteners for Retail, Inc.,* No. 17 C 3595, 2020 WL 215750, at *2 (N.D.Ill. Jan. 14, 2020). There is also no doubt that Playgo has a different – and more constricted – view of what is relevant to the claims and defenses in this case than the other parties.

While the Court does not doubt Playgo's good faith, it does find that Learning Resources has made a sufficient showing to warrant some relief on this aspect of its motion. *See RTS Indus.,* 2020 WL 215750, at *2 (presumption that a party has complied with its obligation to produce relevant documents can be overcome by a strong showing to the contrary). The Court takes note of the large discrepancy between the number of the relevant communications that the Walmart defendants produced versus what Playgo produced. Even if the 39 e-mail chains produced by Playgo each contained multiple e-mails (and Playgo has provided no specificity on this point), there would still be a considerable difference between the number of communications produced by the respective defendants. Playgo has also failed to dispute Learning Resources' assertion that it did not produce the five e-mail chains identified in Learning Resources' opening brief (Dckt. #69 at 7) and referenced above. These e-mail chains reference topics, such as sales and revenue related to Playgo's Gourmet Play Food, that clearly relate to Learning Resources'

4

claims.³  The Court finds that a reasonable review would have deemed such documents to be relevant and subject to production under the MIDP Order.

Playgo's apparent failure to produce all relevant documents could have resulted from the fact that Playgo's personnel made an initial screening of the company's documents to determine which documents were relevant *before* providing those documents to defense counsel.  As Ms. Kwan explained:

> 3. Playgo saves documents in two locations.  First it uses Microsoft Outlook for emails.  Second, it uses a shared server for other documents, such as Excel spreadsheets.
>
> **Emails.**
>
> 4. In Outlook, we create a folder for each of our clients (customers), based on the client's name (in this case the client is Sam's Club).  Upon receipt, we save all emails in that folder.  When sending emails to a customer, we usually copy our own Playgo team members, and hence there would be duplicative emails among colleagues.
>
> 5. In gathering emails and other documents for Playgo's initial disclosures, we provided our outside counsel with emails related to Sam's Club and the development of the Playgo Gourmet Soft Play Food set.
>
> **Other documents**
>
> 6. On the shared server, we create a folder for each client, and in that folder we create a sub-folder based on the year of the product, and then a further sub-folder based on the product.  This means we have a subfolder within the Sam's Club folder for the Playgo Gourmet Soft Play Food set.  **We provided relevant documents in this subfolder to outside counsel.**

(Dckt. #77 at 1-2) (emphasis added).

Thus, it is possible that Playgo's production of communications did not better mirror what the Walmart defendants produced because Playgo's personnel did not forward some pertinent documents to their outside counsel based on a mistaken conception of what is relevant

---

³ As Learning Resources points out, Playgo acknowledged in its Initial Disclosures that "[d]ocuments concerning revenue from, and expenses in connection with, the sale of Playgo Gourmet Soft Play Food product" are relevant to the parties' claims or defenses.  (Dckt. #67-12 at 4).

5

for purposes of the MIDP Order. It is also possible that Playgo simply did not retain all of the documents that the Walmart defendants saved and that it produced all of the relevant documents that it has.

To resolve the questions regarding the completeness of Playgo's production, the Court grants this motion to the extent that it orders defense counsel to confer with Playgo and certify on or before June 1, 2020 that they have made a reasonable effort to assure that Playgo has provided all of the documents in its possession that relate to communications (both internal and with the Walmart defendants) regarding the infringing products that are relevant to the claims or defenses in this case. If any such documents have not been previously produced to Learning Resources, they must be produced by June 1, 2020. *See, e.g., CSMC 2007-C4 Egizii Portfolio LLC v. Springfield Prairie Properties, LLC,* No. 15-3195, 2018 WL 7859720, at *2-3 (C.D.Ill. Aug. 31, 2018) (granting motion to compel and ordering similar relief); *In re Terrorist Attacks on Sept. 11, 2001,* No. 03MDL 1570GBDSN, 2018 WL 3329852, at *2 (S.D.N.Y. July 6, 2018) (same); *see also CytoSport, Inc. v. Nature's Best, Inc.,* No. CIVS061799 DFL EFB, 2007 WL 1040993, at *5 (E.D.Ca. Apr. 4, 2007) ("courts occasionally order a responding party to provide verified responses when a dispute arises as to whether all the requested documents have been produced" and ordering party to provide verified responses that it has produced all responsive documents); *Grove v. Unocal Corp.,* No. 304CV00096TMBDMS, 2008 WL 11429528, at *11-12 (D.Alaska Feb. 12, 2008) (same).

### B. Documents concerning the design and development of the 2019 Soft Play Food

It is undisputed that Learning Resources did not include allegations relating to the 2019 Soft Play Food in its Complaint because Learning Resources did not learn of these products until several months after it filed this lawsuit. Nonetheless, Learning Resources asserts for two

6

reasons that documents related to the design and development of Playgo's 2019 Soft Play Food are relevant and subject to production pursuant to the MIDP Order. First, Learning Resources points out that "courts routinely treat new products introduced in the course of a copyright case as part of the same case." (Dckt. #81 at 9) (citing to *Derek Andrew v. Poof Apparel Corp.,* 528 F.3d 696, 700-01 (9th Cir. 2008) and *Irwin v. ZDF Enterprises GmbH,* No. 04 CIV. 8027 (RWS), 2006 WL 374960, at *6 (S.D.N.Y. Feb. 16, 2006)). Playgo does not dispute this proposition, and the Court finds that the 2019 Soft Play Food is part of this lawsuit for the reasons stated in the above cases notwithstanding the fact that it is not included in the Complaint.

The Court further finds that documents pertaining to the development and design of the 2019 Soft Play Food are relevant to Learning Resources' claims because these documents might help illustrate the changes that Playgo made to its Gourmet Play Food to conceal its infringement.[4] As the Fifth Circuit has held, "[i]nfringement is not confined to exact reproduction but includes colorable alterations made to disguise the piracy." *Tennessee Fabricating Co. v. Moultrie Mfg. Co.,* 421 F.2d 279, 284 (5th Cir.), *cert. denied,* 398 U.S. 928 (1970) (finding that defendants who complied with plaintiff's request to cease manufacturing its unit by redesigning their unit with "colorable alterations" nonetheless infringed on plaintiff's copyright); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 608 (1st Cir. 1988) (same, citing *Tennessee Fabricating*); *see also Indep. Prod. Co. v. Tamor Plastics Corp.,* No. CIV. A. 86-0755-MC-A, 1990 WL 79227, at *3 (D.Mass. May 22, 1990), *aff'd,* 930 F.2d 38 (Fed.Cir. 1991) ("One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy").

---

[4] The Court notes that the Walmart defendants have voluntarily agreed to search for and produce documents pertaining to Playgo's 2019 Soft Play Food in order to avoid further litigation regarding Learning Resources' motion to compel.

7

Finally, the Court rejects Playgo's remaining arguments for why it need not supplement its disclosure to include the additional documents concerning the 2019 Soft Play Food. In particular, Playgo asserts that the MIDP Order requires only "initial" responses, that any additional document must be requested under the discovery rules provided by the Federal Rules of Civil Procedure, and that Learning Resources failed to make any such requests. (Dckt. #75 at 9). This is incorrect. "Under the amended MIDP Standing Order, '[t]he duty of mandatory initial discovery . . . is a continuing duty,' and when 'new or additional information is discovered or revealed[,]' a party must serve supplemental responses addressing that information 'in a timely manner . . . .'" *Hernandez v. Helm,* No. 18 C 7647, 2019 WL 5922233, at *5 (N.D.Ill. Nov. 12, 2019), *quoting* Am. MIDP Standing Order, ¶A.6. Thus, Playgo is required to produce the additional documents pertaining to the 2019 Soft Play Food even though Learning Resources has not issued a document request under Rule 34. *Id.,* at *6 ("Mr. Hernandez can also (and under the MIDP, may be required to) produce his financial information in the context of this litigation even without a corresponding discovery request from the City").

Playgo's assertion that production of the additional documents concerning the 2019 Soft Play Food would not be proportional to the needs of the case given the matters at stake here is likewise unavailing. The MIDP Order requires that a party who objects to providing the required documents on the ground that doing so "would involve a disproportionate expense or burden, considering the needs of the case . . . must explain with particularity the nature of the objection and its legal basis and provide a fair description of the information being withheld." Am. MIDP Standing Order, ¶A.2. Playgo has failed to substantiate its proportionality objection under this standard.

In any event, the Court finds that the burden of producing the documentation concerning the design and development of the 2019 Soft Play Food is not likely to be disproportionate to the stakes in this litigation. Playgo has produced only 320 documents in total thus far (inclusive of documents concerning the design and development of the Gourmet Play Food products). This suggests that there will not be an overly large number of additional documents concerning the design and development of the 2019 Soft Play Food. Moreover, Learning Resources asserts with some evidentiary support that defendants sold over 80,000 of the infringing products at a price of over $2.4 million in 2018. (Dckt. #69 at 9-10; Dckt. #85). Thus, the stakes in the case are not trivial and it appears at this time – contrary to Playgo's intimation – that Learning Resources has justifiably made a federal case out of its dispute with defendants.

For these reasons, the Court grants Learning Resources' motion to the extent that it seeks to compel Playgo to produce documents relating to the development and design of the 2019 Soft Play Food. Accordingly, Playgo is ordered to produce these documents on or before June 1, 2020.

## CONCLUSION

For these reasons, plaintiff Learning Resources' motion to compel [Dckt. ##63, 67, 69] is granted in part and denied in part.

ENTER:

_____
**Hon. Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: April 29, 2020**

9